sxb

**INTAKE**

MAR 0 9 2020 AM

AO 91 (Rev. 11/11) Criminal Complaint

AUSA Matthew Kutcher (312) 469-6132
AUSA Kristen Totten (312) 353-5340
AUSA Edward A. Liva, Jr. (312) 886-7647

FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MAR 0 9 2020

MAGISTRATE JUDGE
JEFFREY I. CUMMINGS

UNITED STATES OF AMERICA

v.

WILLIAM TOWNSEND

20 CR 146 CASE NUMBER:

MAGISTRATE JUDGE CUMMINGS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about December 6, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) | knowing and intentional distribution of a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyll propanamide), a Schedule II Controlled Substance; and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

EMILY MUNCHIANDO
Special Agent, Federal Bureau of Investigation
(FBI)

Sworn to before me and signed in my presence.

Date: March 9, 2020

Judge's signature

City and state: Chicago, Illinois

Jeffrey I. Cummings, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

### AFFIDAVIT

I, EMILY MUNCHIANDO, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately March 2015.

2. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to criminal enterprises, in violation of Title 18, United States Code, Section 1962; narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963; and firearms offenses, in violation of Title 18, United States Code, Section 922. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances, as well in the manner in which criminal enterprises operate and the use and possession of firearms by unauthorized persons.

3. I have received training in the area of firearms and narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.    This affidavit is submitted in support of a criminal complaint alleging that WILLIAM TOWNSEND has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging TOWNSEND with knowing and intentional distribution of fentanyl and heroin, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

## FACTS ESTABLISHING PROBABLE CAUSE

### Background of the Investigation

5.    On November 6, 2017, then-Chief Judge Ruben Castillo of the United States District Court for the Northern District of Illinois entered an Order authorizing the initial interception of wire and electronic communications occurring over a cellular telephone used by Jonathan Mason ("Mason Phone 1"). Initial interceptions of wire and electronic communications over Mason Phone 1 began on November 6, 2017 and terminated on December 6, 2017. On December 5, 2017, the Court entered an Order authorizing the continued interception of wire and electronic communications over Mason Phone 1, and those interceptions began on December 6, 2017 and terminated on December 14, 2017.

6.    During the course of the investigation, the FBI identified several individuals, including Kevin Twyman, who engaged in narcotics trafficking with Mason. The investigation into Mason's drug trafficking operation has revealed, in

part, that Twyman, acting as a broker, obtained narcotics on behalf of Mason and distributed narcotics to Mason. Based in part on interceptions of wire communications, surveillance and a seizure of narcotics as described below, including TOWNSEND distributing fentanyl and heroin to Twyman, which was subsequently seized from Twyman and Mason, and the recovery of TOWNSEND's fingerprints from the envelope containing the narcotics, there is probable cause to believe that on or about December 6, 2017, TOWNSEND distributed wholesale quantities of heroin and fentanyl to Mason and Twyman[1] out of his residence located on the 700 block of W. Couch Place, in Chicago, Illinois ("Townsend Residence")[2].

---

[1] Mason and Twyman have been charged via indictment in the Northern District of Illinois (Case No. 18 CR 157) with, among other things, knowing and intentional possession with intent to distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyll propanamide), a Schedule II Controlled Substance; and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, based on their conduct on or about December 6, 2017. R. 157. On May 20, 2019, Twyman pleaded guilty to Count One of the indictment. R. 453.

[2] Law enforcement believes TOWNSEND resided at the Townsend Residence during the relevant time period for the following reasons: (a) according to records from Atlantic Realty Company, the company that manages the Townsend Residence, TOWNSEND was the lease holder of the Townsend Residence, beginning on May 26, 2017, with a lease expiration date of May 29, 2018 and TOWNSEND was listed as the lease holder of garage parking spot number 218, which was assigned to the Townsend Residence; (b) on or about December 7, 2017, law enforcement surveillance observed a Honda Accord, bearing Illinois license plate XXXXX25, located in parking space number 218 of the Townsend Residence. According to Illinois Secretary of State records, the Honda Accord bearing license plate number XXXXX25 is registered to TOWNSEND; and (c) on or about December 9, 2017, law enforcement conducting surveillance observed TOWNSEND exit the parking garage of the Townsend Residence driving the same grey Honda.

**Between December 1 and December 5, 2017, Twyman and Mason
Arranged to Obtain Narcotics from TOWNSEND**

7. On or about December 1, 2017, at approximately 12:59 p.m. (TP1 Session # 5517)[3], Mason, using Mason Phone 1, called Twyman on telephone number (XXX) XXX-6622 ("Twyman Phone 1")[4]. Mason stated, "...grab a whole thing and at least a trey of the black one [black tar heroin]". Twyman replied, "Ima do that, Ima do that. That's what I told you when we- once, once, we get cleared up, he gone, I'm finna get 2 of em. He got, he got he got bout' 10 of em right now. He got 10 right now. So Ima grab, Ima grab a deuce and Ima grab another deuce of the C [cocaine]. Ima

---

[3] The call summaries that include a "Session" number refer to telephone calls that were intercepted pursuant to the Orders referenced *supra*. To the extent that recorded communications are summarized in this Affidavit, those summaries do not include references to all of the topics covered during the course of the conversation that was recorded. In addition, the summaries do not include references to all statements made by the speakers on the topics that are described. All quotations from recorded conversations are based upon preliminary transcriptions of those conversations and/or from your affiant having personally listened to the recordings. The times listed for the recorded conversations are approximate. At various points in the Affidavit, I included in brackets my interpretation of words and phrases used in the recorded conversations. My interpretations are based on the contents and context of the recorded conversation, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement involved in this investigation.

[4] Twyman is believed to be the user of Twyman Phone 1 for the following reasons: (a) according to interceptions of calls over Mason Phone 1, on December 2, 2017, the user of Twyman Phone 1 told Mason, who was using Mason Phone 1,that he was on his way. Minutes later, Twyman was observed via video surveillance entering Mason's residence at the 6000 block of S. Champlain ("Mason Residence") in Chicago; (b) law enforcement and video surveillance has identified Twyman as the regular user of a black Audi that has been observed regularly arriving at the Mason Residence in conjunction with intercepted calls from Twyman Phone 1 and cellular location data placing Twyman Phone 1 in the area of the Mason Residence; and (c) following a traffic stop of Twyman on December 6, 2017, as described further below, the law enforcement officer who conducted the stop listened to intercepted calls from Twyman Phone 1 and identified the user of Twyman Phone 1 as the same speaker as the individual he had spoken with and identified during the traffic stop as Twyman.

get both of em. Ima get two, two, and Ima get five. Five of the black." Twyman continued, "I'm finna get us loaded up". Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have conferred, I believe that Mason asked Twyman to obtain a kilogram of an unknown narcotic and an unknown amount of black tar heroin, known as a "trey". Twyman told Mason that Twyman's supplier had 10 kilograms of an unknown narcotic and that once Twyman and Mason paid the supplier for a past debt, Twyman planned to obtain 200 grams ("2 of em") of an unknown narcotic, 200 grams of cocaine ("another deuce of the C") and 500 grams of the black tar heroin ("5 of the black").

8. At approximately 11:43 a.m. (TP1 Session # 5763), Mason, using Mason Phone 1, called Twyman, who was using Twyman Phone 1. Twyman said, "Dude [supplier] had called me yesterday. ... He like man, I got some real real nice for ya, man. So I'ma like get (unintelligible). So if he's got like 10 of them bitches, bro, I'm finn' to get at least three of them." Mason responded, "That's what I'm saying. He here?" Twyman responded, "Yeah he here. Yeah he here. He just, he just fresh off the boat." Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have conferred, I believe that, based on this conversation, Twyman's supplier had recently arrived with 10 kilograms of narcotics, of which Twyman and Mason agreed to purchase three kilograms.

9. On December 2, 2017, Mason, using Mason Phone 1, and Twyman, who was using Twyman Phone 1, had a series of phone conversations about collecting

5

money for the purchase of the narcotics. For example, at approximately 7:45 p.m. (TP1 Session # 5898), Mason told Twyman, "You have to run with the 17", believed to be a reference to $17,000, to which Twyman responded, "I'm gonna have to make it to the 20 [$20,000] though, Ima have to make it to 20". At approximately 8:16 p.m. (TP1 Session #5904), Mason, using Mason Phone 1, placed a call to Twyman stating, "I got ahold of another thing, so there's 18", believed to be a reference to Mason having collected $1,000 such that he was in possession of $18,000. Twyman responded, "Aight, ok. I'm on my way."

10. At approximately 8:31 p.m., video surveillance[5] observed Twyman arrive at a residence located on the 6400 block of Champlain Avenue in Chicago, Illinois (the "Mason Residence")[6] driving a black 2013 Audi A8 L Quattro, bearing Illinois license plate XXXXX60[7] (the "black Audi"). Twyman exited the vehicle and entered the Mason Residence. At approximately 8:34 p.m., Twyman exited the Mason Residence alone with a large square bulge wrapped in a plastic bag hanging out of his coat pocket and entered the Audi. Law enforcement surveillance followed

---

[5] During the course of the investigation, in or about August of 2017, a covert video camera was installed in a public area near the Mason Residence.

[6] The residence located on the 6400 block of S. Champlain Avenue has been identified as Mason's residence through the following: (a) law enforcement and video surveillance has regularly observed MASON coming and going from the house on a daily basis since November 6, 2017 through his arrest in case 18 CR 157 on March 15, 2018; (b) telephone location information associated with Mason Phone 1, used by Mason, is regularly located at the Mason Residence; and (c) on November 25, 2017 (Sessions #4460 and #4477), Mason provided "6424 S. Champlain" when stating his address.

[7] Based on a review of records of the Illinois Secretary of State, the a 2013 Audi A8 L Quattro, bearing Illinois license plate XXXXX60 is registered to Individual KB at the 7000 block of S. Wabash, Chicago, Illinois, 60619.

6

Twyman from the Mason Residence to the building that includes the Townsend Residence. Surveillance confirmed that Twyman drove directly with no stops from Mason's Residence to the building that houses the Townsend Residence.

11.     At approximately 9:01 p.m., law enforcement conducting surveillance observed the black Audi travel east on Couch Street and enter the parking garage attached to the building that houses the Townsend Residence. At approximately 10:01 p.m., Twyman, accompanied by an unknown black male who was later identified by law enforcement as TOWNSEND, walked westbound on W. Couch Place to N. Halsted and entered 151 N. Halsted St., Chicago, IL.[8] A few seconds later, TOWNSEND and Twyman exited 151 N. Halsted and continued to walk eastbound on Halsted and entered a restaurant/bar located at 738 W. Randolph St., Chicago, IL.

12.     At approximately 10:36 p.m., law enforcement observed Twyman and TOWNSEND walk northbound on Halsted from Randolph. Twyman and TOWNSEND then went eastbound on Couch Place and entered the building that houses the Townsend Residence.

13.     At approximately 10:53 p.m. (TPI Session # 5925), Mason received an incoming call on Mason Phone 1 from Twyman, who was using Twyman Phone 1. Twyman stated, "Im down here talking to this motherfucker right now my roadie. Ima call you as soon as I finish fucking with him. You know I gotta sit down and talk with him for a minute." Mason replied, "No problem." Based on my training and

---

[8] On December 8, 2017, law enforcement conducting surveillance identified WILLIAM TOWNSEND by visual comparison of law enforcement's observation of TOWNSEND during surveillance with a known Illinois Secretary of State photograph of TOWNSEND.

experience, my knowledge of this investigation, the training and experience of other agents with whom I have conferred and, in particular, law enforcement surveillance of Twyman and TOWNSEND together, I believe that Twyman was discussing meeting with his supplier, that is, TOWNSEND.

14. On or about December 3, 2017, at approximately 3:34 p.m. (TP1 Session # 6044), Mason, using Mason Phone 1, received a call from Twyman, who was using telephone number (XXX) XXX-5422 ("Twyman Phone 2").[9] Twyman stated, "Yea, my bad roadie. I was with that motherfucker all night man. Man, you talking about motherfuckers that party man, god damn, I was with them all night." Mason replied, "Good, good. That's what I want you to do. Be with them." Twyman responded, "Hell yea. I, I, uh, this the, this the move though". Twyman continued, "He in the morning, he gone have, wha, he gone have, three for me." Twyman then said, "Three and, three and a half, a half of tar [black tar heroin]." Mason asked, "He gone have three, three, three, what, three of 'em?" Twyman responded, "Whole ones. Whole ones." Twyman continued, "Yeah, see I got, I was seeing what he was trying to do cause I gave him the whole. I gave him the whole, uh, it was a dub nine. I gave two, I put twenty-nine with what you gave me". Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have

---

[9] It is believed that Twyman is the user of this telephone for the following reasons: (a) the user of this telephone arranged to meet with Mason at Chef Luciano's on November 9, 2017, where law enforcement subsequently observed Twyman meet Mason; and (b) on November 12, 2017, the user of this telephone informed Mason that his girlfriend had committed suicide and that they had found "stuff" in his apartment. CPD police reports confirmed that on November 12, 2017, Twyman reported the death of his girlfriend. CPD officers responded to the scene and recovered one bottle labeled "fentanyl".

conferred, I believe Twyman told Mason that TOWNSEND, Twyman's supplier, had three kilograms of narcotics ("whole ones") and a half-kilogram of black tar heroin ("tar") ready for distribution. Twyman said that he had provided the supplier with approximately $20,000 dollars ("dub"), including $18,000 dollars that Mason had provided to TYWMAN earlier that night along with the $2,900 dollars that Twyman had added to it to make it approximately $20,900.

15. On or about December 4, 2017, at approximately 5:14 p.m. (TP1 Session # 6249), Mason, using Mason Phone 1, placed a call to Twyman, who was using Twyman Phone 1. Twyman said, "He said the morning, Roadie." Mason asked, "Morning?" Twyman said, "Yup." Twyman later said, "He said don't go nowhere though." Mason responded, "Aight". Twyman continued, "He specifically said that." Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have conferred, I believe that Twyman told Mason that Twyman's supplier (TOWNSEND) had to delay the transaction until at least the next day.

### On December 6, 2017, TOWNSEND Distributed Heroin and Fentanyl to Mason and Twyman

16. On or about December 6, 2017, at approximately 8:29 a.m. (TP1 Session # 6592), Mason, using Mason Phone 1, received a call from Twyman, who was using Twyman Phone 1. Twyman said, "...When I get out of court. He [TOWNSEND] here now. So soon I get out of court, it's on." Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with

whom I have conferred, I believe that Twyman told Mason that Twyman's supplier, TOWNSEND, had the narcotics ready for distribution on December 6, 2017.

17. At approximately 4:42 p.m. (TP1 Session # 6685), Mason, using Mason Phone 1, received a call from Twyman, who was using Twyman Phone 1. Twyman said, "I just got off the phone with him. He said goddamn it, he said come to my crib. ... Give him a couple minutes til the traffic die down. Then he'll be here." Mason replied, "I got something on the hook. I'm gonna try to let go." Twyman responded, "Aight, ok. Let me call him. I'm finna to just go down there man." Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have conferred, I believe that Twyman told Mason that his narcotics supplier had the narcotics ready for Twyman. Twyman told Mason that Twyman planned to call the supplier to arrange to pick them up from the supplier instead of waiting for the supplier to deliver them to Twyman's residence.

18. At approximately 4:44 p.m. (TP1 Session # 6686), Mason, using Mason Phone 1, received a call from Twyman, who was using Twyman Phone 1. Twyman said, "I told him I had something in line man. I said that I needed to see him ASAP. He told me to just be at his crib at 7:00. So I'll be at his crib at 7:00." Twyman then said, "I was fittin' to come get you, let you ride with me." Mason responded, "Man, come on. Come get me." Twyman said, "Aight...I'll call you in a few when I'm headed your way." Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have conferred, I believe that Twyman told Mason that his supplier (TOWNSEND) would be ready to deliver

his supply of narcotics at the Townsend Residence, at 7:00 p.m. that night, and that Mason and Twyman agreed to drive together to meet TOWNSEND to obtain the narcotics.

19.     At approximately 4:49 p.m. (TP1 Session # 6687), Twyman, using Twyman Phone 1, placed an outgoing call to Mason who was using Mason Phone 1. Twyman told Mason, "Man, you won't believe what he just called me and asked me". Twyman continued, "Man, he told me, man he needs a couple dollars real quick. Man can I give him a quick quarter?" Mason responded, "2500 [$2,500]?" Twyman replied, "Yeah, I ain't got no damn money bro. All I have I gived up. Man I ain't got nothing bro." Mason responded, "…I got close to 2". Twyman then said, "I already know, but I couldn't tell him no…I got like 4,500." Mason replied, "I got close, I'm right at 19". Twyman responded, "Aight, ok. Aight I gotta put what I got with it. Aight, ok." Based on my training and experience, my knowledge of this investigation, and the training and experience of other agents with whom I have conferred, I believe that Twyman's supplier asked Twyman for an additional $2,500 dollars. Mason told Twyman that he had approximately $2,000, specifically $1,900. Twyman told Mason he would add the $400 or $500 dollars that he had to Mason's $1,900 to fulfill the $2,500 dollar request from the supplier.

20.     At approximately 5:43 p.m. (TP1 Session # 6696), Mason, using Mason Phone 1, placed an outgoing call to Twyman who was using Twyman Phone 1. Twyman told Mason, "I'm like two minutes away from you."

11

21.     At approximately 5:45 p.m., video surveillance observed the black Audi arrive in the area of the Mason Residence in Chicago and park on the west side of S. Champlain. At approximately 5:46 p.m., Twyman was observed exiting the black Audi and entering the Mason Residence.[10] At approximately 5:48 p.m., Twyman exited the Mason Residence and reentered the driver side of the black Audi. Twyman remained inside of the vehicle parked on the east side of S. Champlain. At approximately 5:51 p.m., Mason exited the residence and entered the front passenger seat of the black Audi. Law enforcement officers ("LEOs") conducting surveillance observed the black Audi drive northbound on Champlain Avenue.

22.     At approximately 7:24 p.m., LEOs conducting surveillance observed the black Audi park in the area of 172 N. Halsted Street, Chicago, Illinois, facing southbound.[11] At approximately 7:43 p.m., LEOs observed Mason exit the black Audi and walk southbound on Halsted Street towards Randolph Street and out of the view of surveillance. At approximately 8:12 p.m., LEOs conducting surveillance observed TOWNSEND exit the building associated with the Townsend Residence, and walk westbound on Couch Place while holding a large, yellow envelope. TOWNSEND entered the front passenger side of the black Audi. At approximately 8:14 p.m.,

---

[10] On December 6, 2017, law enforcement officers conducting surveillance observed Twyman enter the black Audi at approximately 1:48 p.m. near the 8000 block of S. Troy, in Chicago, Illinois, and drive away. Twyman remained under constant surveillance until he was seen at the Mason Residence, at which time surveillance of Twyman and Mason continued as described in this affidavit.

[11] On December 6.2017, at approximately 8:06 p.m., cellular location information associated with Twyman Phone 1 provided the telephone was located in the area of the 700 block of W. Couch Pl., Chicago, IL. Similarly, cellular location information for Twyman Phone 2 provided the telephone was located in the area of the 700 block of W. Couch Pl., Chicago, IL.

TOWNSEND exited the black Audi without the large, yellow envelope and re-entered the building associated with the Townsend Residence.

23. At approximately 8:28 p.m. (Session # 6744), Twyman, using Twyman Phone 1, called Mason using Mason Phone 1. Mason said, "Yeah, I'm looking dead at you, aight, I had missed your call. I'm right here on the corner." Twyman responded, "I'm right here waiting. I'm ready. I'm ready." Mason replied, "You ready? Aight, I'm coming out. You see me? I'm right here on the corner, right here. I'm right down here. Here I come. I'm fittin to come out."

24. At approximately 8:34 p.m., LEOs conducting surveillance observed Mason walk back to the Audi from the area of the Randolph Street and Halsted Street intersection, and enter the passenger door of the black Audi. At approximately 8:35 p.m., the black Audi was observed driving southbound on Halsted Street.

25. At approximately 8:48 p.m., LEOs conducted a traffic stop of the black Audi at Garfield Boulevard and Martin Luther King Drive. During the course of the traffic stop, LEOs seized one large yellow envelope, which contained five clear, knotted, plastic baggies containing a white hard chunky substance and two clear knotted plastic baggies containing a black, hard chunky substance.

26. According to testing by the Drug Enforcement Agency Laboratory, the white hard chunky substance in the five clear, knotted, plastic baggies was 496.777 grams of a substance containing fentanyl, and the black, hard chunky substance in the two clear knotted plastic baggies was 245.3 grams of a substance containing heroin. Also during the search, Mason indicated that he was in the possession of

13

approximately $2,000 dollars and Twyman indicated he was in possession of several hundred dollars.

27.     Law enforcement sent the envelope that contained both the heroin and fentanyl that was seized from Twyman and Mason on December 6, 2017 to the FBI laboratory.  On or about November 25, 2019, FBI Laboratory determined that two of TOWNSEND's fingerprints were identified on the envelope that contained both the heroin and fentanyl.

14

## CONCLUSION

28. Based on the above information, I respectfully submit that there is probable cause to believe that on or about December 6, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, WILLIAM TOWNSEND did knowingly and intentionally distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyll propanamide), a Schedule II Controlled Substance; and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

EMILY MUNCHIANDO
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on March 9, 2020.

Jeffrey I. Cummings
United States Magistrate Judge

15